UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA | PLAINTIFF |
| vs. | CRIMINAL ACTION NO. 3:16CR-149-RGJ |
| MOHAMMED AL ASAI | DEFENDANT |

**UNITED STATES' TRIAL MEMORANDUM**
*Electronically Filed*

The United States of America, by and through the undersigned Assistant United States Attorneys, respectfully submits this trial memorandum in accordance with the previous order of the Court.

**I.     STATUTES INVOLVED AND ELEMENTS OF OFFENSES**

Count One of the Indictment charges a violation of 7 U.S.C. § 2024(b).  To establish a violation of that statute, the United States must prove:

First, that the defendant acquired more than $100 worth of Electronic Benefit Transfer card benefits in a way that was contrary to law; and

Second, that the defendant knew that his acquisition of the Electronic Benefit Transfer card benefits was contrary to law.

*See* 7 U.S.C. § 2024(b).

Counts Two and Three of the Indictment charge violations of 18 U.S.C. § 1343.  To establish a violation of that statute, the United States must prove:

First, that the defendant knowingly participated in, devised, or intended to devise a scheme to defraud in order to obtain money or property;

Second, that the scheme included a material misrepresentation or concealment of a material fact;

Third, that the defendant had the intent to defraud; and

Fourth, that the defendant used wire communications, or caused another to use wire communications in interstate commerce in furtherance of the scheme.

*See* 18 U.S.C. § 1343.

## II. STATEMENT OF FACTS

### A. Undisputed Facts

Counsel for the United States and defense counsel conferred regarding whether there were agreed-upon facts. Defense counsel stated that he agreed that the Defendant owned Al Yasmine Food Mart (Al Yasmine). He also stated that information provided by the Defendant in his application for Al Yasmine to become an approved retailer with the Supplemental Nutrition Assistance Program, also known as SNAP or the food stamp program, was undisputed. Additionally, the parties previously filed a stipulation that a wire communication in interstate commerce is generated each time a SNAP Electronic Benefit Transfer (EBT) card is swiped for a purchase at a point-of-sale machine. Other than these facts, the Defendant takes the position that all facts are disputed.

### B. United States' Statement of Facts

Around October 15, 2012, the defendant opened Al Sadiq Food Mart, doing business as Al Yasmine Food Mart, at 6700 Strawberry Lane in Louisville, Kentucky. Around that time, he submitted an application for Al Yasmine to become an approved retailer with SNAP. Al Yasmine was classified as a "small grocery" store, though it also sold hot food and non-food items. As part of Al Yasmine's application, the defendant signed a certification stating:

> I accept responsibility on behalf of the firm for violations of the Supplemental Nutrition Assistance Program regulations, including those committed by any of the firm's employees, paid or unpaid, new, full-time, or part-time. These include violations such as, but not limited to:
> - Trading cash for Supplemental Nutrition Assistance Program benefits (i.e. trafficking);
> - Accepting Supplemental Nutrition Assistance Program benefits as payment for ineligible items;
> - Accepting Supplemental Nutrition Assistance Program benefits as payment on credit accounts or loans;
> - Knowingly accepting Supplemental Nutrition Assistance Program benefits from people not authorized to use them[.]

Al Yasmine was accepted as a SNAP retailer and continued to be one until USDA revoked its authorization to be a SNAP retailer in November 2016.

In 2015, the United States Department of Agriculture (USDA) and the Federal Bureau of Investigation (FBI) began investigating Al Yasmine's redemption of SNAP benefits. They targeted Al Yasmine because it had a significantly higher level of redemption of SNAP benefits compared to similar stores in the area. Additionally, since Al Yasmine became an authorized SNAP retailer, a substantial number of transactions had been flagged as suspicious by the USDA-Food and Nutrition Service Anti-fraud Locator using EBT Retailer Transactions (ALERT) system. The ALERT system flags certain transactions as suspicious when they are indicative of patterns of activity that have been identified in prior investigations as associated with fraud.

During the course of the investigation, USDA and FBI sent three confidential informants into Al Yasmine to attempt to sell SNAP benefits for cash. Al Yasmine was generally frequented by Muslim men. The first confidential informant was a Muslim female, the second was a non-Muslim male, and the third was a Muslim male.

Initially, the Defendant told the female confidential informant he could not buy her benefits, but indicated he would put her in touch with someone who would. Later, he introduced her to Kareem Taqi and indicated he could buy her benefits. Unlike Asai, Taqi was not an

3

authorized SNAP retailer. Rather, Taqi was a customer of Al Yasmine who received food stamps. According to Taqi, the Defendant told him the Defendant wanted to purchase SNAP benefits from the female confidential informant but could not due to a feud with her cousin. As such, he wanted Taqi to be the Defendant's proxy in purchasing her benefits. Taqi agreed, and the two took the female confidential informant's card, and used it to buy items for Al Yasmine at Sam's Club and other places. Later, Asai also swiped the card at Al Yasmine. Over $500 was charged to the card, and the female confidential informant was given $350. Later, the Defendant started purchasing benefits from the female confidential informant directly. As noted in the previously filed stipulation, each swipe of an EBT card, including those of the female confidential informant's card that are specified in the superseding indictment, generates a wire in interstate commerce.

The Defendant refused to purchase benefits from the non-Muslim male confidential informant.

The Defendant directed his employee to provide cash for benefits to the Muslim male confidential informant.

In August 2016, a search warrant was executed at Al Yasmine. Several EBT cards were found in the store, along with papers that appeared to be used to track SNAP payments. One of the EBT cards belonged to an individual who was out of the country at the time of the search warrant. A comparison between the SNAP transaction history and travel records of several Al Yasmine customers shows that, while these customers were out of the country, their SNAP cards were depleted at Al Yasmine. Witnesses have indicated that the Defendant would provide the customers with cash in advance of their travel, then the customers would leave their EBT cards at the store while they were gone, and the Defendant would deplete the balance of the card.

In addition to providing cash in exchange for benefits, the Defendant would provide other non-food items of value in exchange for SNAP benefits. The Defendant would allow customers to purchase non-food items, such as cigarettes or electronics, from his store with SNAP benefits. The Defendant owned a car lot and would let people make payments on cars using SNAP benefits. The Defendant was a notary and would allow people to pay for notary services using SNAP benefits. The Defendant would also pay people's utility bills in exchange for SNAP benefits.

### III.   ANTICIPATED SUBSTANTIVE ISSUES OF LAW

At this time, the United States does not anticipate any substantive issues of law.

### IV.   ANTICIPATED EVIDENTIARY ISSUES

#### A.   Coconspirator Statements Made by the Defendant's Employees and Customers

The Defendant was the head of conspiracy to commit SNAP fraud. His coconspirators included customers, who exchanged their SNAP benefits for non-food items of value at the Defendant's store, and the Defendant's employees, who provided customers with non-food items in exchange for SNAP benefits. There will be evidence regarding statements made by one employee addressing whether and how a customer could get cash back for benefits. There may also be testimony regarding statements made by customers and employees during these transactions. Under Federal Rule of Evidence 801(d)(2)(E), coconspirators statements made during and in furtherance of a conspiracy are not hearsay.

In the Sixth Circuit, the trial judge alone is responsible for deciding whether statements by co-conspirators are admissible, and thus, the question of admissibility should not be submitted to the jury. *See*, *e.g.*, *United States v. Mitchell*, 556 F.2d 371, 377 (6th Cir. 1977). Instructions that the jury may only consider a co-conspirator's statement if the jury first finds that a conspiracy

existed and that the defendant was a member of it have repeatedly been held to be "altogether unnecessary." *See*, *e.g.*, *United States v. Enright*, 579 F.2d 980, 986-87 (6th Cir. 1978). The judge should not advise the jury of the United States' burden of proof on the preliminary question of admissibility, or the judge's determination that the United States has met its burden. *United States v. Vinson*, 606 F.2d 149, 153 (6th Cir. 1979). Instead, the judge should admit the statements, subject only to instructions on the United States' ultimate burden of proof beyond a reasonable doubt, and on the weight and credibility to be given statements by coconspirators. *Id*.

In *United States v. Wilson*, 168 F.3d 916 (6th Cir. 1999), the court elaborated on the district judge's responsibility for deciding whether coconspirators' statements are admissible. "Before a district court may admit statements of a co-conspirator, three factors must be established: (1) that the conspiracy existed; (2) that the defendant was a member of the conspiracy; and (3) that the coconspirator's statements were made in furtherance of the conspiracy. This three-part test is often referred to as an Enright finding." *Id*. at 920, *citing United States v. Monus*, 128 F.3d 376, 392 (6th Cir. 1997) and *United States v. Enright*, 579 F.2d 980, 986-87 (6th Cir. 1978). The party offering the statement carries the burden of proof on these factors by a preponderance. *Wilson*, 168 F.3d at 921, *citing Bourjaily v. United States*, 483 U.S. 171, 176 (1987). The district court may consider the hearsay statements themselves in deciding whether a conspiracy existed. *Wilson*, 168 F.3d at 921, *citing Bourjaily*, 483 U.S. at 181 and Fed. R. Evid. 801 (advisory committee note on 1997 amendment to Rule 801). The district judge's ruling on the statements' admissibility under Fed. R. Evid. 801(d)(2)(E) is generally reviewed for clear error, but if an evidentiary objection is not made at the time of the testimony, the ruling is reviewed for plain error. *Wilson*, 168 F.3d at 920, *citing United States v. Gessa*, 971 F.2d 1257, 1261 (6th Cir. 1992) (en banc) and *United States v. Cowart*, 90 F.3d 154, 157 (6th Cir. 1996).

### B. Statements Made by Defendant's Employees and Agents Within the Scope of that Relationship

Under Federal Rule of Evidence 801(d)(2)(D), a statement by a party's employee or agent made during the existence of that relationship on a matter within the scope of the relationship is not considered hearsay when used against the party. In order to admit the admission under this exception to the hearsay rule, the United States must establish that "the statement is offered against a party and is ... a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." *Carter v. University of Toledo*, 349 F.3d 269 (6th Cir. 2003).

Here, the United States anticipates introducing two kinds of statements that fall under Rule 801(d)(2)(D). First, as mentioned above, the United States anticipates introducing statements of the Defendant's employees. The Defendant had several employees who worked in the store, operating the cash register and assisting customers. In the course of their duties, at the Defendant's behest, they would at times swipe EBT cards and provide cash in exchange for SNAP benefits, and make statements regarding instructions they had received from the Defendant or the store's practices with respect to providing cash in exchange for SNAP benefits. There will be evidence of statements made by the Defendant's employees during these transactions, including statements made by Defendant's employee to the Muslim male confidential informant. Second, defense counsel in this case has acted as the Defendant's agent in a related administrative proceeding regarding the revocation of Defendant's status as an authorized SNAP retailer. During this proceeding, defense counsel submitted a letter providing Defendant's version of facts regarding the alleged SNAP violations of Al Yasmine. Neither the statements of the employees in discussing

the exchange of cash for benefits nor the statements of defense counsel in acting as Defendant's agent during the administrative proceeding are hearsay under Rule 801(d)(2)(D).

### C. Transcripts

The United States expects to admit evidence that contains recordings of transactions in the store involving the female Muslim confidential informant and the male Muslim confidential informant. A portion or all of the conversation in some of these transactions is in Arabic. As such, English language translated transcripts will be provided to the Court, the defendant, and the jury. The United States intends to call the linguist who prepared the verbatim English translated transcripts of the conversations. The United States has provided notice of this linguist testifying as an expert in Arabic-to-English translations. It is permissible to allow an English language jury to evaluate evidence of a tape-recorded conversation in a foreign language solely through the use of a properly authenticated English language transcript. *United States v. Font-Ramirez*, 944 F.2d 42, 49 (1st Cir. 1991). Accordingly, courts have long approved the introduction into evidence of English transcripts for recordings conducted in foreign languages. *United States v. Rengifo*, 789 F.2d 975, 983 (1st Cir. 1991); *United States v. Cruz*, 765 F.2d 1020, 1024 (11th Cir. 1985) (permitting English language jury to consider translated transcripts as substantive evidence); *United States v. Ulerio*, 859 F.2d 1144, 1145 (2nd Cir. 1988) (admitting English language translations into evidence and allowing jury to retain the transcripts during their deliberations). With respect to the consensually recorded transactions, the United States intends to introduce versions of the recordings that are clipped for content and duration. These clips will focus on the evidence relevant to the United States' case in chief. The conversations will be properly authenticated prior to the introduction of the transcripts.

### D. Scope of Cross-Examination

The scope of a cross-examination is within the discretion of the trial court. Fed. R. Evid. 611(b). Rule 611(b) requires the court to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." "Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness." *Id*. The scope of cross-examination does not extend to matters that are irrelevant, or as to which the relevance is substantially outweighed by unfair prejudice. Fed. R. Evid. 402, 403. This issue may come up in a variety of ways, but in particular, prior work of the confidential informants is not relevant unless it relates to their credibility.

### E. Improper Use of 302s and Agent Notes

Defense counsel should be limited to using interview summaries provided in the form of memoranda of interview and agent notes consistent with the law and Rules of Evidence. The United States will provide defense counsel with reports of interviews and agent notes from numerous interviews, in case the agent ends up testifying to subjects covered in the reports or notes. These reports and notes are Jencks material for the agent who wrote them if he testifies about their substance. However, under Sixth Circuit law, these reports and notes do not constitute "statements" of the interviewed witnesses. *See United States v. Dorman*, 108 Fed. App'x 228, 244-45 (6th Cir. 2004); *United States v. Nathan*, 816 F.2d 230, 236-37 (6th Cir. 1987); *United States v. Pope*, 2007 WL 4395533 (W.D. Mich. 2007). The interviewed witnesses have not reviewed these reports and notes, checked them for accuracy, or adopted them in any way.

Defense should be precluded from introducing the contents of the interview summaries to impeach witnesses on the basis of inconsistent statements because the interview summaries are statements of law enforcement agents summarizing the substance of an interview, not the statements of the witnesses themselves. *Palermo v. United States*, 360 U.S. 350-53 (1959). Moreover, defense must be precluded from publishing the contents of the interview summaries to the jury, or otherwise suggesting to the jury that the interview summary is a statement of the witness. *See United States v. Marks*, 816 F.2d 1207, 1210-11 (7th Cir. 1987) (holding that where defense counsel read from a 302 during cross-examination in a way that would "seem authoritative" and potentially confuse the jury, the judge was entitled to require the witness be shown the 302 and given the opportunity to adopt or reject it as a statement, although such a practice was no longer required by the Federal Rules of Evidence).

The defense is free to ask a witness whether he or she made a statement that is reflected in an interview summary. However, if the defense is not satisfied with the witness' answer, the defense may not publish or introduce the contents of the interview summary as a prior inconsistent statement. "[S]uch documents [i.e., interview reports] have been deemed inadmissible for impeaching witnesses on cross-examination because they represent the 'investigator's selections, interpretations, and interpolations." *United States v. Brika*, 416 F.3d 514, 529 (6th Cir. 2005), *abrogated on other grounds by United States v. Booker*, 543 U.S. 222 (2005).

F.   **Reverse Rule 404(b) Evidence**

The Defendant legitimately sold groceries at Al Yasmine. It is anticipated that the Defendant may attempt to introduce evidence of instances when he did not purchase Supplemental Nutrition Assistance Program benefits for cash or when he conducted legitimate Supplemental Nutrition Assistance Program transactions. Such evidence is irrelevant and inadmissible, as it does

not negate the charge that he acted unlawfully on other occasions. The United States anticipates filing a motion *in limine* to exclude this type of "reverse 404(b) evidence" of lawful activity.

### G. Improper Character Evidence

Other than testimony from character witnesses fitting within the narrow confines of Federal Rules of Evidences Rule 404(a)(1) and 405(a), evidence offered by defendant of his lawfulness or good conduct is not admissible. The United States anticipates filing a motion *in limine* to exclude this type of improper character evidence.

### H. Summary Charts

The United States anticipates introducing summary charts illustrating SNAP sales at Al Yasmine compared to other stores, along with charts related to the exchange of SNAP benefits for cash while customers were out of the country and the exchange of SNAP benefits for utility payments. District courts have routinely allowed the United States to introduce charts and summaries based on the evidence. *See United States v. Johnson*, 319 U.S. 503, 519 (1943); *United States v. Gardner*, 611 F.2d 770, 776 (9th Cir. 1980); *see also* Fed. R. Evid. 1006 (specifically permitting the use of charts and summaries, even when the underlying records are not produced in court). The summaries need not contain a defendant's anticipated evidence. *Myers v. United States*, 356 F.2d 469, 470 (5th Cir. 1966); *Barsky v. United States*, 339 F.2d 180, 181 (9th Cir. 1964). Copies of the summaries may be used during the testimony concerning them. *See Myers*, 356 F.2d at 470. The summaries may be used during deliberations. *See United States v. Koskerides*, 877 F.2d at 1129, 1134 (2d Cir. 1989); *United States v. Silverman*, 449 F.2d 1341, 1346 (2d Cir. 1971).

The Sixth Circuit addressed the issue of summaries and described three kinds of summaries: (1) primary-evidence summaries, (2) pedagogical-device summaries or illustrations;

11

and (3) secondary-evidence summaries that are a combination of (1) and (2) "in that they are not prepared entirely in compliance with Rule 1006 and yet are more than mere pedagogical devices designed to simplify and clarify other evidence in the case." *United States v. Bray*, 139 F.3d 1104, 1112 (6th Cir. 1998). Here, the United States anticipates using primary-evidence summaries.

Primary-evidence summaries that are admissible pursuant to Rule 1006 summarize "voluminous writings, recordings or photographs which cannot be conveniently examined in court." Fed. R. Evid. 1006. The summaries rather than the underlying documents are to be considered evidence. *See Bray*, 139 F.3d at 1111 (citing 1 Edward J. Devitt, et al., *Federal Jury Practice and Instructions* § 14.02 (4th ed. 1992); and 1 Leonard B. Sand, et al., *Modern Federal Jury Instructions* (Criminal) § 5.05, pp. 5-34 (1997)). Therefore, these summary charts are properly admissible as evidence without a limiting instruction.

### I. Certified Business Records

The United States will introduce business records pursuant to Federal Rule of Evidence 803(6). These records will include records from USDA, bank records of the Defendant, Department of Homeland Security travel records related to certain customers, records from Sam's Club relating to the Defendant, and records from utility companies. These records are admissible as an exception to the hearsay rule. Fed. R. Evid. 803(6).

A business record must satisfy four requirements in order to be admissible under Rule 803(6): (1) it must have been made in the course of a regularly conducted business activity; (2) it must have been kept in the regular course of that business; (3) the regular practice of that business must have been to make the record; and (4) the record must have been made by a person with knowledge of the transaction or from information transmitted by a person with knowledge. *See United States v. Salgado*, 250 F.3d 438, 451 (6th Cir. 2001) (citations omitted). "The custodian of

the records need not be in control of or have individual knowledge of the particular corporate records, but need only be familiar with the company's record-keeping practices." *Id*.

Under F.R.E. 902(11), the requirements for admission of a business record may be met without the testimony of a custodian or other witness. The Government will use Rule 902(11) certifications in this case.

### J.     Defense Exhibits

Defense has provided limited reciprocal discovery despite the United States' requests. On October 16, 2018, defense counsel provided the United States with records related to the Defendant's work related to the United States military. No other records have been provided. The United States will object to the introduction of any evidence not produced in advance of trial by the Defendant and the Court is justified in precluding the use of any evidence not produced pursuant to the discovery and scheduling orders and Federal Rules of Criminal Procedure. *See*, *e.g.*, *United States v. Hardy*, 586 F.3d 1040, 1043 (6th Cir. 2009).

## V.     ANTICIPATED TRIAL PROBLEMS

### A.     Sealing Certain Trial Exhibits Containing Personally Identifying Information

Many of the exhibits contain personally identifying information, including EBT card numbers, SNAP household numbers, and bank information. Based on the volume of documents, it is not realistic to redact all personally identifying information from all of the documents. The more efficient method is to seal all records that contain personally identifying information. Also,

the monitors in the courtroom facing the public should not display any of this sensitive information.

### B. Arabic Interpreter

At least three witnesses for the United States have limited English proficiency and will require use of a court-certified Arabic interpreter, which will be provided by the United States.

### C. Confidential Informant's Identity

The United States may be filing a motion for a protective order related to one of the confidential informants.

## VI. CONCLUSION

WHEREFORE, the United States respectfully submits this trial memorandum in compliance with the Court's order. The United States' Proposed Jury Instructions, Proposed Voir Dire, and Exhibit List will be filed separately; while the United States' Witness List will be submitted for the Court's *in camera* review.

> Respectfully submitted,
>
> RUSSELL M. COLEMAN
> UNITED STATES ATTORNEY
>
> *s/ Amanda E. Gregory*
> Amanda E. Gregory
> Jessica R. C. Malloy
> Assistant United States Attorneys
> 717 West Broadway
> Louisville, Kentucky 40202
> (502) 582-5016 (Tel.)
> (502) 582-5067 (Fax)

## CERTIFICATE OF SERVICE

  I hereby certify that on October 16, 2018, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the counsel to the defendant.

                *s/ Amanda E. Gregory*
                Amanda E. Gregory
                Assistant U.S. Attorney